UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHNNY SEEMANN,

       Plaintiff,     **MEMORANDUM OF**
                **DECISION & ORDER**
   -against-        15-CV-02065 (ADS) (AYS)

COASTAL ENVIRONMENTAL GROUP, INC.,

       Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Tabak, Mellusi & Shisha**
*Attorneys for the Plaintiff*
29 Broadway
New York, NY 10006
   By: Jacob Shisha, Esq., Of Counsel

**Rubin Fiorella & Friedman, LLP**
*Attorneys for the Defendant*
292 Madison Avenue
11th Floor
New York, NY 10017
   By: Michael E. Stern, Esq.,
      Kristin E. Poling, Esq., Of Counsel

**Steven A. Berkowitz & Associates, P.C.**
*Attorneys for GSI Disaster Services, Inc.*
One Greentree Centre
Suite 201
Marlton, NJ 08053
   By: Ira E. Dorfman, Esq., Of Counsel

**SPATT, District Judge:**

   This action arises out of allegations by the Plaintiff Johnny Seemann (the "Plaintiff") that he suffered injuries due to the unseaworthiness of a barge on which he worked, and the alleged negligence of the Defendant Coastal Environmental Group, Inc. (the "Defendant Coastal"), in violation of the Jones Act, 46 U.S.C. § 30104 (the "Jones Act") and general maritime law. The

1

Plaintiff now seeks to amend his complaint pursuant to Federal Rule of Civil Procedure (FED. R. CIV. P. or the "Rule(s)") 15 to add GSI Disaster Services, Inc. ("GSI") as a Defendant. For the following reasons, the Plaintiff's motion to amend is granted in part and denied in part.

## I. BACKGROUND

### A. Relevant Procedural History

On April 15, 2015, the Plaintiff filed a complaint against the Defendant Coastal, seeking damages for the injuries he suffered due to the Defendant Coastal's alleged negligence and the alleged unseaworthiness of a barge, the MV Army I (the "Army I"), upon which the Plaintiff worked. The Plaintiff asserted a claim under the Jones Act for negligence; and claims under general maritime law for the alleged "unseaworthiness" of the Army I and for maintenance and cure obligations.

On September 15, 2015, the Defendant Coastal filed an amended third-party complaint against GSI pursuant to Rule 14(c). Thereafter, GSI moved to dismiss the amended third-party complaint and, on July 2, 2016, the Court dismissed the third-party complaint. The Court based its holding on the fact that the Defendant Coastal moved to implead GSI under Rule 14(c) instead of 14(a), but also determined that because the Plaintiff did not designate his claims as admiralty claims under Rule 9(h), impleader under 14(c) was unavailable to the Defendant Coastal. (*See* Court's Memorandum of Decision and Order, ECF No. 34 at 12).

On July 7, 2016, the Plaintiff moved to amend his complaint pursuant to Rule 15 to add GSI as a defendant, alleging the same causes of action against GSI as he alleged against the Defendant Coastal in the initial complaint. The Plaintiff clarified that he does not intend to file under Rule 9(h), and again requested a trial by jury.

On July 21, 2016, GSI filed a memorandum in opposition to the Plaintiff's motion to amend. The Court notes that when it dismissed the third-party complaint against GSI, that party should have been removed from the docket as a party. However, GSI was not removed from the docket on ECF. Although GSI was technically not a party to the action when it filed its memorandum in opposition, the Court exercises its discretion and accepts GSI's memorandum of law as an interested party. The Defendant Coastal has not filed a memorandum in opposition.

**B. The Alleged Facts**

The following facts are drawn from the Plaintiff's proposed amended complaint (the "PAC"), and are accepted as true for the purposes of the instant motion.

At all relevant times, the Defendant Coastal and GSI both operated, managed and controlled the Army I, a self-propelled barge. (PAC at ¶¶ 5, 7–9, 11–13). GSI owned the Army I, and the Defendant Coastal owned it *"pro hac vice."* (Id. at ¶¶ 5–6). That is, the Defendant Coastal chartered the Army I from GSI. (*Id.* at ¶ 18). The Defendant Coastal hired the Plaintiff as a seaman and member of the Army I crew. (*Id.* at ¶ 10).

On January 24, 2014, the Plaintiff injured his back and shoulder when he slipped and fell on a patch of ice and/or snow on the deck of the Army I. (*Id.* at ¶ 14). The Plaintiff states that he had to undergo surgery and, as of the filing of his PAC, the Plaintiff was allegedly still not fit for duty. (*Id.* at ¶ 19). The Plaintiff alleges that both Defendants were negligent by failing to de-ice the deck or maintain a non-skid surface. (*Id.* at ¶ 15). The Plaintiff further alleges that he made several requests for salt or de-icing material but that those requests were never fulfilled. (*Id.* at ¶ 16).

3

## II. DISCUSSION

### A. The Legal Standard

FED. R. CIV. P. 15(a)(2) applies to motions to amend the pleadings once the time for amending a pleading as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12–CV–4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits").

"In deciding whether to permit the addition of defendants, courts apply the 'same standard of liberality afforded to motions to amend pleadings under Rule 15.'" *Henriquez v. Kelco Landscaping Inc.*, 299 F.R.D. 376, 379 (E.D.N.Y. 2014) (Spatt, J.) (quoting *Fair Hous. Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).

A court should deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502–03 (E.D.N.Y. 2001);

4

*Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137–38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

## B. Application to the Facts

### 1) As to the Delay of the Motion to Amend, whether the Plaintiff Acted in Bad Faith and the Resulting Alleged Prejudice to GSI

Although GSI does not argue prejudice or bad faith, the Court considers these matters *sua sponte*, and finds that the Plaintiff did not act in bad faith or with undue delay, and that there is no resulting prejudice to GSI.

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not show prejudice). "The concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

As stated above, GSI was interplead into this action by the Defendant Coastal approximately three months after the Plaintiff filed his initial complaint. The Plaintiff moved to add GSI as a defendant only ten days after the Court dismissed the third-party complaint. Furthermore, discovery was stayed while GSI's motion to dismiss the third-party complaint was pending. The Court therefore finds that there is no evidence that the Plaintiff has engaged in bad faith. Also, GSI is not prejudiced by the delay.

### 2) As to the Futility of the Plaintiff's Motion to Amend

Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Under the *Bell Atlantic v. Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks and alterations omitted)).

The Court notes here that GSI refers to its contract with the Defendant Coastal throughout its memorandum. The Court declines to consider the contract in deciding the Plaintiff's motion to amend. In deciding a motion to amend, the Court accepts the factual allegations in the PAC as true, and does not consider any exhibits outside of those included or incorporated by reference in the complaint or the PAC. *See Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 331 (E.D.N.Y. 2016) (Spatt, J.) ("A court must accept all allegations in the

proposed amended complaint as true and draw all reasonable inferences in the plaintiff's favor") (quoting *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities LLC*, 568 F.3d 374, 381 (2d Cir. 2009); *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006) ("In considering a motion for leave to amend, the court must accept as true all of the proposed complaint's factual allegations, and draw all reasonable inferences in favor of plaintiff."); *see also Nettis v. Levitt*, 241 F.3d 186, 194 n. 4 (2d Cir. 2001) (stating that motions to amend are adjudicated without resort to outside evidence); *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 257 (S.D.N.Y. 2012) (declining to consider affidavits and other outside evidence submitted by proposed defendants in opposition to the plaintiff's motion to amend); *Dipace v. Goord*, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004) ("Normally, a motion for leave to amend is adjudicated without resort to any outside evidence"); *Durabla Manufacturing Co. v. Goodyear Tire and Rubber Co.*, 992 F. Supp. 657, 661 n. 4 (S.D.N.Y. 1998) ("The Court declines to consider the deposition testimony submitted by defendants in opposition to plaintiff's motion for leave to amend the Complaint.").

### a) As to the Futility of the Plaintiff's Negligence Claim Under the Jones Act Against GSI

The Plaintiff states that he should be granted leave because justice so requires. GSI does not address the Plaintiff's negligence claim in any meaningful manner. However, the Court finds that the Plaintiff's proposed negligence claim under the Jones Act against GSI would be futile because GSI was not the Plaintiff's employer during the relevant period.

The Jones Act provides seamen injured during the course of their employment with a private right of action against their employer in federal court. It states that "[a] seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the

seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The standard for a Jones Act claim is a "low and liberal" one, requiring only that "the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest* in producing the injury . . . for which damages are sought." *Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d 55, 57 (2d Cir. 1986) (emphasis in original) (citing *Rogers v. Mo. Pac. R. Co.*, 352 U.S. 500, 506, 77 S. Ct. 443, 448, 1 L. Ed. 2d 493 (1957). However, a Jones Act plaintiff must nonetheless establish a *prima facie* case of negligence by showing that 1) a dangerous condition actually existed on the ship, 2) the defendant shipowner had notice of the dangerous condition and should have reasonably anticipated the plaintiff might be injured by it, and 3) if the shipowner was negligent, such negligence proximately caused the plaintiff's injuries. *Golden v. City of New York*, No. 14 Civ. 2229, 2015 WL 2237540, at *2 (S.D.N.Y. May 14, 2015) (citing *Diebold*, 805 F.2d at 58).

The Second Circuit has reinforced what the statute itself says—that only employers can be held liable under the Jones Act. *See Sologub v. City of N.Y.*, 202 F.3d 175, 178 (2d Cir. 2000) (stating that the Jones Act permits a maritime worker to bring a federal negligence claim against his employer); *Karvelis v. Constellation Lines S.A.*, 806 F.2d 49, 52 (2d Cir. 1986) ("[O]ur court has held that only an employer can be liable under the Jones Act."); *see also Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 170 (2d Cir. 1973) ("There has never been any question that the Jones Act applies only between employees and their employers"); *Unterberg v. ExxonMobil Oil Corp.*, No. 14–CV–10025, 2016 WL 4533563, at *3, -- F. Supp. 3d -- (S.D.N.Y. Aug. 23, 2016) ("A seaman plaintiff may only bring a Jones Act action against his employer.") (citing, *inter alia*, *Cosmopolitan Co. v. McAllister*, 337 U.S. 783, 789, 69 S. Ct. 1317, 1321, 93 L. Ed. 1692 (1949)).

The Plaintiff has not alleged that GSI employed him. He stated clearly in his PAC that "Coastal hired [the] Plaintiff as a seamen and member of the crew . . . ." (PAC at ¶ 10). Therefore, the Plaintiff's proposal to add a negligence claim under the Jones Act against GSI would be futile.

Accordingly, the Plaintiff's motion to amend his complaint to add a claim of negligence under the Jones Act against GSI is denied as futile.

### b) As to the Futility of the Plaintiff's Unseaworthiness Claim Against GSI

The Plaintiff again relies on case law that broadly states that leave to amend should be granted when justice so requires. He does not state why his claim of unseaworthiness against GSI should withstand scrutiny under FED. R. CIV. P. 12(b)(6). GSI relies on its contract with the Defendant Coastal, which, as stated above, the Court declines to consider, and further argues that the presence of ice or snow on the deck of a vessel does not render it unseaworthy.

Under general maritime law, unseaworthiness is a claim "based on the vessel owner's duty to ensure the vessel is reasonably fit to be at sea." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441, 121 S. Ct. 993, 997, 148 L. Ed. 2d 931 (2001). Unlike liability under the Jones Act, "liability for unseaworthiness does not depend either on negligence, or on notice." *Martinez v. United States*, 705 F.2d 658, 660 (2d Cir. 1983) (citations omitted); *see also, e.g., Oxley v. City of N.Y.*, 923 F.2d 22, 24 (2d Cir. 1991); *In re Compl. of McAllister Towing & Transp. Co.*, No. 12-CV–6334, 2015 WL 1515369, at *4 (S.D.N.Y. Mar. 31, 2015); *Lisowski v. Reinauer Transp. Co.*, No. 03–CV–5396, 2009 WL 763602, at *13 (E.D.N.Y. Mar. 23, 2009).

A shipowner is strictly liable for injuries caused by the vessel's unseaworthy condition. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 549, 80 S. Ct. 926, 932, 4 L. Ed. 2d 941 (1960). A shipowner is not "obligated to furnish an accident-free ship" but has a duty to "to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but

reasonable fitness." *Id.* at 550; *see also Oxley*, 923 F.2d at 24 (2d Cir. 1991). "The general rule is that the vessel must be staunch, strong, well equipped for the intended voyage and manned by a competent and skillful master of sound judgment and discretion." *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1155 (2d Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S. Ct. 1499, 59 L. Ed. 2d 772 (1979).

Accordingly, to prevail on a claim of unseaworthiness, a plaintiff must establish that a vessel was unseaworthy, in that it was insufficiently or defectively equipped and/or maintained, and that his injuries resulted from the vessel's defective or insufficient condition. *Oxley*, 923 F.2d at 26; *Barlas v. United States*, 279 F. Supp. 2d 201, 208 (S.D.N.Y. 2003); *Sadler v. Moran Towing Corp.*, 204 F. Supp. 2d 695, 697 (S.D.N.Y. 2002).

The Second Circuit has held that the presence of ice on a ship's deck may present a condition of unseaworthiness. In *Oxley v. City of N.Y.*, 923 F.2d 22 (2d Cir. 1991), the court held that a district court's granting of summary judgment for a defendant owner was improper where a third party had slipped on ice that had accumulated on the deck and fell on the plaintiff, causing injuries to the plaintiff. *Id.* at 24–26. The court stated: "It seems to us that [the plaintiff's] claim of unseaworthiness also must be resolved by a jury. To prevail on this claim, [the plaintiff] need only prove that the [vessel] was insufficiently or defectively equipped, and that his injuries resulted from the unseaworthy condition of the vessel." *Id.* at 26 (citing *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 726, 87 S. Ct. 1410, 1412, 18 L. Ed. 2d 482 (1967); *Poignant v. United States*, 225 F.2d 595, 596 (2d Cir. 1955)). The *Oxley* court specifically referred to evidence in the record that showed that the vessel was not adequately furnished with sand and that the deck heating system was inadequate. *Id.*

10

The *Oxley* decision is instructive because if the Court accepts the Plaintiff's allegations as true, which it must do at this juncture, they plausibly suggest that the vessel was unseaworthy. In sum, the fact that the Plaintiff slipped on ice or snow that had accumulated on the deck of the ship plausibly suggests that the vessel was unseaworthy.

Other courts in the Second Circuit have similarly held that the presence of ice or a slippery substance may render the vessel unseaworthy. *See, e.g., Nicroli v. Den Norske Afrika–Og Australielinie Wilhelmsens Dampskibs–Aktieselskab*, 332 F.2d 651, 654 (2d Cir. 1964) (affirming a finding of unseaworthiness where wet and melted sugar had made the deck slippery); *Troupe v. Chicago, D. & G. Bay Transit Co.*, 234 F.2d 253, 258 (2d Cir. 1956) (holding that triable issues of fact existed as to whether the vessel was unseaworthy because certain steps "were so painted and maintained as to be excessively slippery, especially when covered with water from a rain"); *In re Bridge Const. Servs. of Florida, Inc.*, 39 F. Supp. 3d 373, 386 (S.D.N.Y. 2014) (denying summary judgment for defendant barge owner where ice accumulated on a barge that had been chartered in a bareboat charter agreement, stating that the design of the ship may have contributed to the accumulation); *Jiminez v. United States*, 321 F. Supp. 232, 233 (S.D.N.Y. 1970) (finding unseaworthiness where de-greaser solvent created a slippery condition and was allowed to remain unwiped, and while the workers lunched elsewhere without roping off the ladder or putting up any warning); *see also Rice v. Atl. Gulf & Pac. Co.*, 484 F.2d 1318, 1321 (2d Cir. 1973) ("Unseaworthiness exists only when the oil or grease creates such a condition of slipperiness that the deck or stairway is no longer reasonably fit for its intended use by the crew.")

In support of their proposition that the presence of ice does not render a vessel unseaworthy, GSI cites to several cases, only one of which, *Colon v. Trinidad Corp.*, 188

F. Supp. 97, 100 (S.D.N.Y. 1960), *amended* 188 F. Supp. 803, is a case in the Second Circuit. The *Colon* decision, as amended, held that a plaintiff could not recover under a theory of unseaworthiness where the plaintiff stood on a turpentine can and fell off the turpentine can. *Id.* at 805. In the Court's view, that holding does not bear on the outcome of this case. The original decision held that "a seaman is not absolutely entitled to a deck that is not slippery. He is absolutely entitled to a deck that is not unreasonably slippery." 188 F. Supp. at 100. That holding is in line with this Court's decision. This is not a motion for summary judgment. At this juncture, the Court is merely holding that the Plaintiff has presented sufficient facts to plausibly support a finding that the Army I was unseaworthy.

The remainder of GSI's argument is dedicated to arguing that an owner of a vessel does not have a non-delegable duty to provide seamen with a seaworthy vessel when the vessel is chartered under a bareboat charter agreement, and that GSI did not know about any unseaworthy condition prior to the charter. As stated above, neither the Plaintiff's initial complaint nor his PAC refer to the charter agreement or incorporate it by reference, and therefore the Court declines to consider any arguments based on the alleged charter at this stage of the case.

As to the knowledge requirement, the Supreme Court has held that a "shipowner's actual or constructive knowledge of the unseaworthy condition is not essential to his liability. Th[e] [*Alaska*] decision also effectively disposes of the suggestion that liability for a temporary unseaworthy condition is different from the liability that attaches when the condition is permanent." *Trawler Racer*, 362 U.S. at 549 (citing *Alaska S.S. Co. v. Petterson*, 347 U.S. 396, 74 S. Ct. 601, 98 L. Ed. 798 (1954)); *see also Poignant*, 225 F.2d at 598 ("Since the inquiry in unseaworthiness cases is not directed to the issue of the owner's fault, it follows that prior notice, actual or constructive, of the unseaworthy condition is not essential to a cause of action based on

that doctrine."); *Barlas v. United States*, 279 F. Supp. 2d 201, 206 (S.D.N.Y. 2003) ("The law of unseaworthiness has been described as a species of 'strict liability' or even a 'no fault doctrine.'") (citing *Gravatt v. City of New York*, 226 F.3d 108, 116 (2d Cir. 2000)).

Accordingly, the Court finds that the Plaintiff's proposal to add an unseaworthiness claim against GSI would not be futile. Therefore, his motion to add that claim to his complaint is granted.

### c) As to the Futility of the Plaintiff's Maintenance and Cure Claim Against GSI

The Plaintiff again relies on case law that broadly states that leave to amend should be granted when justice so requires. He does not state why his proposed maintenance and cure claim against GSI should withstand scrutiny under FED. R. CIV. P. 12(b)(6). GSI does not address the maintenance and cure claim in any meaningful way. Nonetheless, the Court finds that the Plaintiff's proposed claim of maintenance and cure against GSI is futile.

"Under general maritime law, seamen who have become ill or injured while in a ship's service have the right to receive maintenance and cure from the owner of the vessel." *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 81 (2d Cir. 2013) (citing *Ammar v. United States*, 342 F.3d 133, 142 (2d Cir. 2003)); *see also Messier v. Bouchard Transp.*, 688 F.3d 78, 83–84 (2d Cir. 2012), *as amended* (Aug. 15, 2012) ("A claim for maintenance and cure concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship.") (quoting *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001)). A seaman is entitled to maintenance and cure only "until he reaches maximum medical recovery." *Vaughan v. Atkinson*, 369 U.S. 527, 531, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962).

13

"The right to maintenance does not depend on the shipowner's fault or the job-relatedness of the seaman's injury; tort law rules of contributory negligence, comparative fault, assumption of risk and unseaworthiness do not apply." *Haney v. Miller's Launch, Inc.*, 773 F. Supp. 2d 280, 290 (E.D.N.Y. 2010) (citations and quotations omitted).

However, similar to liability under the Jones Act, liability for general maritime maintenance and cure is restricted to employers. *See Vaughan v. Atkinson*, 369 U.S. 527, 532–33, 82 S. Ct. 997, 1000–01, 8 L. Ed. 2d 88 (1962); ("[T]he duty to provide maintenance and cure is imposed by the law itself as one annexed to the employment") (internal citations omitted); *Fink v. Shepard S.S. Co.*, 337 U.S. 810, 815, 69 S. Ct. 1330, 1333, 93 L. Ed. 1709 (1949) ("[T]he right to maintenance and cure is annexed to the employment, is an incident of the marine employer-employee relationship, and because only the owner or owner *pro hac vice* of a vessel is liable for wages, which also stem from the contract of employment.") (internal citations and quotation marks omitted); *Mahramas v. Am. Exp. Isbrandtsen Lines, Inc.*, 475 F.2d 165, 169 (2d Cir. 1973) (stating that the proper parties for a Jones Act claim or a maintenance and cure claim are the employer and the employee); *Stemmle v. Interlake Steamship Co.*, No. 15–CV–4937, 2016 WL 4098559, at *1, -- F. Supp. 3d -- (E.D.N.Y. July 27, 2016) (Spatt, J.) (stating that the duty for maintenance and cure arises out of employment).

As the Plaintiff stated in his PAC, the Defendant Coastal was the owner *pro hac vice* of the vessel, and the Defendant Coastal employed him. Therefore, GSI would not be liable to the Plaintiff for maintenance and cure.

Therefore, the Plaintiff's motion to amend his complaint to add a claim of maintenance and cure against GSI is denied because it would be futile.

## III. CONCLUSION

Accordingly, the Plaintiff's motion to amend his complaint pursuant to FED. R. CIV. P. 15 is granted in part and denied in part. It is granted to the extent that he is permitted to add GSI as a defendant to the action and assert a claim against it of unseaworthiness under general maritime law. It is denied to the extent that he may not add claims of maintenance and cure or negligence under the Jones Act because those claims would be futile.

It is **SO ORDERED:**

Dated: Central Islip, New York
November 29, 2016                 */s/ Arthur D. Spatt*
                                           ARTHUR D. SPATT
                                         United States District Judge